**DOREY CORPORATION et al., Plaintiffs,**

v.

**E. I. duPONT de NEMOURS AND COMPANY et al., Defendants.**

**No. 74 Civ. 3826.**

United States District Court, S. D. New York.

Jan. 24, 1977.

946

Pomerantz Levy Haudek & Block, New York City (Abraham L. Pomerantz, Stanley M. Grossman, New York City, of counsel), Dickstein, Shapiro & Morin, New York City (David I. Shapiro, Arthur J. Galligan, New York City, of counsel), David Berger, P.A., Philadelphia, Pa. (David Berger, H. Laddie Montague, Jr., Philadelphia, Pa., of counsel), Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa. (Seymour Kurland, Judah I. LaBovitz, Philadelphia, Pa., of counsel), Cochrane & Bresnahan, St. Paul, Minn. (John A. Cochrane, St. Paul, Minn., of counsel), for plaintiffs and plaintiff class.

Milgrim Thomajan & Jacobs, New York City (David P. Langlois, Robert A. Meister, Griffith B. Price, Jr., New York City, of counsel), for Objecting Class Members, Springs Mills, Inc., J. P. Stevens & Co., Inc., CPC International Inc., West Point-Pepperell, Inc., Fieldcrest Mills, Inc., H. Lowenstein & Sons, Inc., Texfi Industries, Inc., Deering Milliken, Inc., Cono Mills Corp., Greenwood Mills, Spartan Mills, Beaunit Corp., United Merchants and Manufacturers, Inc.

Bergson, Borkland, Margolis & Adler, Washington, D.C. (Donald L. Hardison, Herbert A. Bergson, Robert A. Burka, Washington, D.C., of counsel), for Burlington Industries, Inc.

Donovan Leisure Newton & Irvine, New York City (George S. Leisure, Jr., New York City, of counsel), for defendant American Cyanamid Company.

## OPINION

BONSAL, District Judge.

Following the settlement of this antitrust class action, the Court received two petitions for allowances of attorneys' fees and disbursements as follows:

1) Petition of Dickstein, Shapiro & Morin; Pomerantz Levy Haudek & Block; David Berger, P.A.; and Wolf, Block, Schorr & Solis-Cohen, counsel for plaintiffs-class representatives in these consolidated class actions (hereinafter referred to as "petitioners"), seeking an allowance of attorneys' fees in the amount of $2,300,000 together with reimbursement of expenses and costs of paralegal services in the amount of $92,407.93;

2) Petition of Cochrane & Bresnahan, St. Paul, Minnesota, and associate counsel (hereinafter referred to as "Cochrane"), seeking an allowance of attorneys' fees in the amount of $485,000 and reimbursement of expenses in the amount of $10,809.79.

Briefs objecting to these attorneys' fees have been filed on behalf of Burlington Industries, Inc., which claims an 11% interest in the distributable settlement fund, and on behalf of Springs Mills, Inc. and other mills which are members of the settlement class claiming a 17.8% share in the distributable settlement fund. A public hearing was held on October 22, 1976 to consider the plan of distribution of the settlement funds and the petitions for attorneys' fees and disbursements.

### Background

On July 18, 1974, an indictment was filed in the United States District Court for the District of New Jersey charging the defendants herein with having criminally conspired to fix and maintain, at artificially high levels, the prices of various dyestuffs and related products in violation of the Sherman Act (15 U.S.C. § 1). Subsequently, each of the defendants pled *nolo contendere*. The United States also instituted a civil action, naming the same defendants, seeking only injunctive relief.

On September 4, 1974, this action was commenced by the petitioners' filing of a complaint on behalf of Dorey Corporation and others. (Civil Action No. 74 Civ. 3826) (the "Dorey Complaint"). An additional plaintiff, Calina Industries, Inc., also represented by petitioners, filed a separate action on September 5, 1974 (74 Civ. 3842). On October 31, 1974 the *Dorey* and *Calina* actions were consolidated.

On December 27, 1974, a class action was instituted in the United States District Court for the District of Minnesota which action was substantially identical to the *Dorey* action. Another action was instituted in the United States District Court for the Central District of California on behalf of Lorber Industries and four other named plaintiffs. Both of these actions were eventually transferred to this district and consolidated with *Dorey.*

Following some limited pretrial discovery, settlement negotiations were entered into and a stipulation of settlement and compromise was signed on April 28, 1975. By Order dated April 30, 1975, this Court directed that notice of the proposed settlement be mailed to each class member identified by defendants' records. A hearing was held on September 2, 1975 to determine the fairness, reasonableness and adequacy of the proposed settlement and, in a Memorandum decision filed October 22, 1975, as amended by Order filed November 5, 1975, this Court approved the settlement pursuant to Rule 23(e) of the Federal Rules of Civil Procedure. Jurisdiction was retained for the purposes of passing on attorneys' fees and expenses and any issues arising out of the administration of the settlement. *Dorey Corp. et al. v. E. I. duPont de Nemours and Company, et al.,* CCH Trade Rep. ¶ 60,576 (S.D.N.Y.1975).

The settlement established a fund of $15,-000,000 on which interest has been accruing, so that at the present time the settlement fund is in excess of $16,700,000. The plan of distribution was filed with the Court on September 17, 1976 and it is estimated therein that the members of the plaintiff class will recover over 55% of the damages sustained as a result of the alleged price fixing by the defendants. The plan of distribution, as amended, was approved by the Court at a hearing on October 22, 1976.

After the fixing of attorneys' fees, and barring appeals, it is expected that the settlement fund will be promptly distributed to the plaintiff class.

### Services Rendered by Petitioners

Immediately after the filing of the *Dorey* Complaint, petitioners sought to intervene in the New Jersey criminal action by requesting the trial judge to refuse any *nolo* pleas and to have the Grand Jury documents impounded for use in the *Dorey* action. Both efforts were unsuccessful.

Following limited discovery, in the course of which defendants produced voluminous documents relating both to liability and damages, the parties entered into settlement negotiations in the early spring of 1975 which resulted in the settlement agreement. A Claims Committee was established consisting of representatives of the plaintiffs and the defendants and was charged with the responsibility of establishing proper procedures to verify the claims and implement the settlement. The work of the Claims Committee was complex, involving the analysis of 1,730 claims representing total purchases of relevant products in the aggregate amount of $711,465,935.62. Base prices were established for each dye purchased by each claimant in order to determine the amount of purchases made below the pre-conspiracy prices. Since there were approximately 20,000 different dyes involving thousands of different calculations, a computer firm was hired to help in the analysis. In addition, a full-time paralegal was hired to administer the claims depository in Washington, D.C.

### Services Rendered by Cochrane

In the fall of 1974, following the filing of the criminal indictment against the defendants in New Jersey, Cochrane was approached by Carolina Yarns Processors, Inc. regarding the filing of a civil antitrust action against the defendants and, in December 1974, Cochrane instituted an action in the United States District Court for the District of Minnesota denominated as a "national class action." The defendants moved to transfer the action to New York and, on February 18, 1975, with the consent of the plaintiff, the action was transferred to this Court and eventually consolidated with *Dorey.*

Cochrane participated in the negotiations leading to the settlement of these actions

and has been active in the work of the Claims Committee in the review and processing of the twenty claims each of which was in excess of $5,000,000.

### Discussion

### A. *Petitioners' Application*

The record of these proceedings discloses that the petitioners obtained a favorable settlement for the Class in a very short time after the criminal proceedings were instituted against the defendants. There is no doubt that the petitioners demonstrated great skill and ingenuity in bringing about a speedy resolution of these matters. There is also no doubt that the petitioners have a solid reputation in the antitrust field and that the defendants were represented by skilled and able attorneys. Finally, there is no doubt that the class as a whole stands to be benefitted by the services rendered, receiving a possible 55% of the maximum they might have recovered in an individual action following a long and difficult litigation.

Both the petitioners and objectants have called the Court's attention to numerous decisions in the federal courts which they say support their contentions. In brief, the petitioners contend that in view of the success which they have achieved in a short period of time and the contingent nature of their employment, and as private attorneys general, they are entitled to liberal allowances. *See Alpine Pharmacy, Inc. v. Chas. Pfizer & Co.,* 481 F.2d 1045, 1050 (2d Cir.), *cert. denied,* 414 U.S. 1092, 94 S.Ct. 722, 38 L.Ed.2d 549 (1973); *City of Detroit v. Grinnell Corp.,* 495 F.2d 448 (2d Cir. 1974); *Grace v. Ludwig,* 484 F.2d 1262, 1267 (2d Cir. 1973), *cert. denied,* 416 U.S. 905, 94 S.Ct. 1610, 40 L.Ed.2d 110 (1974); *Rosenfeld v. Black,* 56 F.R.D. 604, 605 (S.D.N.Y.1972); *Dolgow v. Anderson,* 43 F.R.D. 472, 487 (E.D.N.Y.1968).

The objectants, on the other hand, contend that any award must be made with an eye toward moderation, *City of Detroit v. Grinnell Corp., supra* at 470; *Lindy Bros. Builders, Inc. v. American Radiator & Standards Sanitary Corp.,* 487 F.2d 161 (3d Cir.

1973), and that the value of an attorney's time, as reflected in his normal billing rate and hours spent in the litigation, should be the "lodestar" of the court's fee determination. *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp., supra* at 167–68. In addition, the objectants question the propriety of a risk multiplier for every hour worked when much of the work, according to the objectants, was either unsuccessful or relatively ministerial in nature following the approval of the settlement.

█ In the Court's view, the standard to be applied in this fee determination is the reasonable value of the services rendered by the petitioners and, in determining that reasonable value, the Court must find that the services themselves were reasonable under the circumstances. It is the Court's opinion that the petitioners are entitled to what they would have received from a private client plus a markup to the extent that their services were of a contingent nature. *See City of Detroit v. Grinnell Corp., supra; Levin v. Mississippi River Corp.,* 377 F.Supp. 926 (S.D.N.Y.), *aff'd* 508 F.2d 836 (2d Cir. 1974); *Feder v. Harrington,* 58 F.R.D. 171, 177 (S.D.N.Y.1972); *see also Mills v. Electric Auto-Lite,* 396 U.S. 375, 396–97, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970).

█ The starting point in considering petitioners' application must be the time spent by the attorneys. *City of Detroit v. Grinnell Corp., supra* at 470. Here, the petitioners have provided detailed information as to how their time was spent. Approximately 650 hours were spent in the drafting of complaints, motion practice in the New Jersey criminal action and preparation of the class certification motion; 3400 hours in discovery and settlement negotiations; and 2400 hours in claims administration. Petitioners also provide a list of the hours spent by each attorney and the corresponding billing rates. Petitioners submit that a total of 6409.60 hours were spent on this litigation and that the fees which would have been received for this work if the case were non-contingent would equal $619,838.80.

■ While the Court is aware that a "just and adequate" fee cannot be ascertained merely by multiplying the attorneys' hours by normal billing rates, it is only after such a calculation that other less objective factors can be considered. *City of Detroit v. Grinnell Corp., supra* at 471. Among these other factors are: (1) the amount recovered, which in this case is substantial; (2) the complexity of the litigation, including any benefit of a prior judgment or decree in a case brought by the Government; (3) the skill and standing of the counsel at the bar; and (4) the "risk of litigation". *City of Detroit v. Grinnell Corp., supra* at 470; *see also TransWorld Airlines, Inc. v. Hughes,* 312 F.Supp. 478 (S.D.N.Y.1970), *modified on appeal,* 449 F.2d 51 (2d Cir. 1971), *rev'd on other grounds,* 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973); *Hanover Shoe, Inc. v. United Shoe Machinery Corp.,* 245 F.Supp. 258 (M.D.Pa.1965), *vacated on other grounds,* 377 F.2d 776 (3d Cir. 1967), *aff'd in part and rev'd in part,* 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968).

In addition, consideration should be given to the fact that petitioners have acted as private attorneys general, *see Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 130–31, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969); *Minnesota Mining & Manufacturing Co. v. New Jersey Wood Finishing Co.,* 381 U.S. 311, 318, 85 S.Ct. 1473, 14 L.Ed.2d 405 (1965); *Rosenfeld v. Black, supra,* and that such activity should not be discouraged.

■ While the petitioners are persuasive in their arguments that the size of the recovery and the amount of time spent in this litigation supports a substantial allowance for attorneys' fees, awards in these cases must be made with an eye toward moderation and the rights of those interested in the fund. *Trustee v. Greenough,* 105 U.S. 527, 536, 26 L.Ed. 1157 (1881); *City of Detroit v. Grinnell Corp., supra* at 469.

■ As previously stated, petitioners are entitled at least to an amount equal to the fees they would have received if this case were taken on a non-contingent basis. According to petitioners' application, a total of 6409.60 hours was spent in this litigation and the fees which petitioners would have received if this were a non-contingent litigation and if they were paid for their services on a time basis (number of hours spent by each attorney multiplied by the "hourly rate" of that attorney) would equal $619,838.80.

An additional fee will be allowed for the period prior to the Court's approval of the settlement agreement on October 22, 1975. According to petitioners' application, approximately 63% of the total time was for services during this period. The value of these services on a time basis is approximately $390,000. An additional $390,000 will be allowed the petitioners in view of the risk factor. *See Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 382 F.Supp. 999, 1024 (E.D. Pa.1974); *Arenson v. Board of Trade of City of Chicago,* 372 F.Supp. 1349, 1359 (N.D.Ill.1974); *see also City of Philadelphia v. Chas. Pfizer & Co.,* 345 F.Supp. 454, 485 (S.D.N.Y.1972).

Accordingly, petitioners are allowed $619,838.80 plus $390,000 for a total allowance of $1,009,838.80 which is rounded out to $1,010,000.

■ Petitioners also seek reimbursement of disbursements and costs in the amount of $92,407.93 for such items as court fees, air freight and messenger service, travel expenses, business meals, duplicating and xerox costs, toll calls, postage, transcript costs, and paralegal help at cost. Petitioners have attached itemized lists of these disbursements and costs to their application and no objections have been made to the application for reimbursement. Upon review of petitioners' application, the Court will allow reimbursement of disbursements and costs in the amount of $92,407.93.

## B. The Cochrane Application

It appears from the Cochrane application that following the institution of the two government actions in New Jersey, Cochrane was approached by Carolina Yarns Processors, Inc. to institute antitrust pro-

ceedings against defendants in the District Court of Minnesota and that Cochrane filed a "national class action" in that court in December 1974. The *Carolina* action was then transferred to the Southern District of New York in February 1975 and consolidated with the *Dorey* action in April 1975. It appears from the application that the legal services in Minnesota were limited to filing of a complaint, moving for class certification, and consenting to defendants' motion to transfer the *Carolina* action to the Southern District of New York.

Following the transfer of the *Carolina* action in February 1975, the application alleges that Cochrane participated in negotiations leading to the settlement of these actions and that he has been active in the administration of the settlement to the extent of assisting in the processing of some 20 claims filed by members of the class, each of which is in excess of $5,000,000. The Cochrane application alleges that a total of 4,128.1 hours was spent in this litigation, as follows:

| | | |
|---|---|---|
| Senior Counsel | — | 2,088.3 hours |
| Intermediate Counsel | — | 369.10 hours |
| Junior Counsel | — | 1,670.75 hours |

In considering applications for attorneys' fees, the Second Circuit has held:

> "Once the District Court ascertains the number of hours that the attorney and his firm spent on the case, it must attempt to value that time. Valuation obviously requires some fairly definite information as to the way in which that time was spent (discovery, oral argument, negotiation, etc.) and by whom (senior partners, junior partners or associates)." *City of Detroit v. Grinnell Corp., supra* at 471.

Here, the application does not describe how the time was spent, nor does it list an hourly billing rate for individual attorneys. Rather, the application asserts that a normal hourly rate for senior counsel is $100.00 to $150.00 per hour; for intermediate counsel, $75.00 per hour; and for junior counsel $35.00 per hour. Under these circumstances, the Court is unable to compute the value of the time alleged to have been spent in accordance with the standards set forth in *City of Detroit v. Grinnell Corp., supra.*

The Court is aware that Cochrane participated in the settlement negotiations and assisted in the administration of the settlement. The Cochrane application alleges that 65% of senior counsels' time and all time spent by intermediate and junior counsel was devoted to the administration of the settlement. Accordingly, an award of $75,000 will be allowed, which appears adequate to cover the time spent on the settlement negotiations and the administration of the settlement.

The Cochrane application also seeks reimbursement of disbursements and costs in the amount of $10,809.79 alleging that these were out-of-pocket expenses necessary for the prosecution of these cases. The Cochrane application fails, however, to itemize the disbursements and costs for evaluation by the Court. *See City of Detroit v. Grinnell Corp., supra* at 473. Accordingly, Cochrane's application for reimbursement of disbursements and costs will be denied.

Settle Order on Notice.