ANSCHUTZ PETROLEUM MARKET-
ING CORPORATION, Plaintiff,

v.

E.W. SAYBOLT & CO., INC. and E.W.
Saybolt & Co., S.A., Defendants.

E.W. SAYBOLT & CO., INC. and E.W.
Saybolt & Co., S.A., Third-Party
Plaintiffs,

v.

EXXON CORPORATION, Exxon Inter-
national Company, a Division of Exxon
Corporation and Lago Oil and Trans-
port Co., Ltd., Third-Party Defendants.

No. 82 Civ. 4498 (CSH).

United States District Court,
S.D. New York.

April 22, 1986.

356

Milgrim, Thomajan, Jacobs & Lee, New York City (Samuel Rosen, Victoria Cundiff, of counsel), for plaintiff.

Levy, Bivona & Cohen, New York City (Joseph V. Figliolo, of counsel), for defendants.

Charles A. Beach, New York City, for Exxon.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

In a Memorandum Opinion and Order dated May 3, 1985, familiarity with which is assumed, the Court granted plaintiff's motion to strike defendants' third-party com-

plaint. The Court also granted the motion of third-party defendants for summary judgment dismissing that third-party complaint. Finally, the Court granted the motion of plaintiff and third-party defendants for sanctions under Rule 11, F.R.Civ.P.

Counsel for plaintiff and third-party defendants were directed to file and serve affidavits giving the details of expenses and fees incurred in connection with the third-party complaint. Those affidavits are now at hand. Counsel for defendants have filed papers in opposition.

The third-party defendants comprise Exxon Corporation; Exxon International Company, one of its divisions; and Lago Oil and Transport Co., Ltd. These parties claim $64,772.45 in attorneys' fees and $2,098.79 in disbursements for a total of $66,871.24. These parties (hereinafter the "Exxon group") utilized the services of "in-house" counsel. Two Exxon attorneys were assigned to the case. According to the affidavits, the more senior attorney logged a total of 590 hours on the case, and the junior 118.50 hours. Other attorneys within the Exxon group are said to have worked on the case, but they kept no time sheets, and are not included in the total. The attorneys' fees are calculated on the basis of stated hourly rates which are calculated by Exxon's general counsel. The rates are established annually, and take into account "the attorney's salary and benefits and some, but not all, of the overhead related to the employment of the attorney.... The hourly rate includes nothing for profit." Foster Affidavit dated June 28, 1985 at ¶ 7.

Plaintiff Anschutz Petroleum Marketing Corporation was represented by the firm of Milgrim, Thomajan, Jacobs & Lee. The Milgrim firm calculates that 318.85 hours should be allocated to legal services occasioned by the third-party complaint. The fee application results from the application of the individual attorneys' billing rates to those hours.

Based on these calculations, Anschutz's claim is for $29,977.75 in attorneys' fees

and $1,695.20 in legal disbursements totalling $31,672.95.

I am not prepared to award the full amounts requested. There are two reasons:

■ (1) I do not regard Rule 11 as automatically imposing upon the sanctioned party or counsel liability for the full amount of the prevailing party's attorney's fees. That would be the result if the intended effect of Rule 11 was to do away with the "American rules" of costs, *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), in all cases where Rule 11 sanctions are imposed, in favor of the "English rule." But I do not believe that the rule has, or was intended to have, that effect.

The last sentence of Rule 11 provides as follows:

If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

I interpret this provision to mean that, in the event of a Rule 11 violation, the Court *must* impose "an appropriate sanction," which *may* (but need not) include an order to pay "a reasonable attorney's fee."

If that interpretation is correct, it follows *a fortiori* that the district court has the discretion to fashion a sanction for purposes of deterrence which awards part, but not all, of the opposing party's attorney's fees. That is to say: adequate *deterrence* may permissibly fall short of full *compensation*. In such a case, the payment required by the sanction would be regarded as a payment on account of the other party's costs.

The deterrent, as opposed to compensatory, function of the Rule 11 sanction is stressed by District Judge Schwartzer (N.D.Cal.) in his thoughtful essay "Sanctions Under the New Federal Rule 11—A Closer Look," 104 F.R.D. 181, 185:

The rule provides for sanctions, not fee shifting. It is aimed at deterring and, if necessary, punishing improper conduct rather than merely compensating the prevailing party. The key to invoking Rule 11, therefore, is the nature of the conduct of counsel and the parties, not the outcome.

In 1985, The Federal Judicial Center published a study of Rule 11 sanctions. Kassin, *An Empirical Study of Rule 11 Sanctions* (Federal Judicial Center 1985). On the basis of questionnaires sent to federal district judges and case descriptions, the study gave rise to two principal findings:

(1) the majority of judges selected deterrence as the primary function, and

(2) those who favored a compensatory rationale were the most likely to impose sanctions.

P. 33. The analysis continued:

... the courts do not appear to apply a consistent rationale in computing awards. Some are imposed as a "fine" on the offending attorney, whereas others are based strictly on the goal of compensating the injured party for unnecessarily incurred expenses.

P. 32 (footnotes omitted).

On my analysis of Rule 11, the trial judge has a broad discretion in fashioning a Rule 11 sanction. It is therefore perhaps not surprising that no single "consistent rationale" runs through all the cases.

In the Second Circuit, consideration of Rule 11 sanctions necessarily begins with *Eastway Construction Corp. v. The City of New York*, 762 F.2d 243 (2d Cir.1985). Judge Kaufman said this at 762 F.2d 254 n. 7:

By employing the imperative "shall," we believe the drafters intended to stress the mandatory nature of the imposition of sanctions pursuant to the rule. Unlike the statutory provisions that vest the district court with "discretion" to award

fees, Rule 11 is clearly phrased as a directive. Accordingly, where strictures of the rule have been transgressed, it is incumbent upon the district court to fashion proper sanctions.

A natural concomitant of a mandatory imposition of sanctions is a broadened scope of review by the Court of Appeals. Where the only question on appeal becomes whether, in fact, a pleading was groundless, we are in as good a position to determine the answer and, thus, we need not defer to the lower court's opinion.

At the same time, however, we note that the district courts retain broad discretion in fashioning sanctions, and apportioning fees between attorney and client. The commentary to Rule 11 sets forth a number of the factors that will be examined in arriving at an appropriate award, and in determining by whom any costs will be borne. In reviewing the specifics of an award of attorneys' fees, therefore, we shall continue to adhere to the "abuse of discretion" standard.

I interpret this to mean that a Rule 11 violation mandates a "sanction," with the district court retaining a broad discretion in its fashioning.

■ In the case at bar, Saybolt's third-party complaint against the Exxon group was dismissed primarily on the basis of the legal insufficiency of Saybolt's theories, viewed against a background of essentially undisputed facts. Furthermore, almost all of those facts had been developed by depositions and other pre-trial discovery before the third-party pleading on behalf of Saybolt was filed. In these circumstances, *prima facie* responsibility for the Rule 11 violation falls upon counsel for Saybolt, who in contrast to their lay client are in a better position to assess the strengths or weaknesses of legal theories of recovery. In consequence, I am no longer of the view that the present record requires further hearings in order to determine the relative culpabilities of counsel and Saybolt. *Cf.* Memorandum Opinion and Order of May 3, 1985 at slip op. 15.

In consequence, counsel for Saybolt find themselves facing, in the first instance, an asserted liability for attorney's fees and expenses of about $100,000. I have no doubt that a significant sanction imposed upon counsel, but falling short of this amount, would serve as an effective deterrent.

■ On the subject of deterrence, it also appears accurate to observe that counsel's transgression lay in the assertion of legally insufficient theories of recovery, rather than fraudulent conduct from which bad faith must necessarily be inferred. The main thrust of the 1983 amendments to Rule 11 is to expand the levy of sanctions from the latter circumstance so as to embrace the former; but the degree of the transgression still counts for something.

The financial conditions of the entities involved are also pertinent. In *Tedeschi v. Smith Barney, Harris Upham & Co.*, 579 F.Supp. 657 (S.D.N.Y.1984), *aff'd*, 757 F.2d 465 (2d Cir.1985), Judge Weinfeld said at 664:

> The assessment of fees against a non-prevailing litigant must be fair and reasonable based upon the particular circumstances of the case, including the financial resources and ability of the parties against whom the award is made and the financial status of the prevailing party.

In the case at bar, there is no evidence that the financial status of Anschutz Petroleum Marketing Corporation is one of pressing need. Nor is there reason to believe that the Exxon group is so situated. On the other hand, Saybolt's law firm has not suggested that taxing it with the full legal fees and costs would subject the firm to "financial ruin," in Judge Weinfeld's phrase in *Tedeschi* at 664; *cf. Faraci v. Hickey-Freeman Co.*, 607 F.2d 1025, 1028–29 (2d Cir. 1979) (in Title VII action where prevailing party was allowed "a reasonable attorney's fee as part of the costs," 42 U.S.C. § 2000e–5(k), court stated generally that "where the plaintiff can afford to pay, of course, the congressional goal of discouraging frivolous litigation demands that full

fees be levied," but remanded for consideration of whether in light of defeated litigant's economic circumstances "a lesser sum assessed would have fulfilled the statute's deterrent purpose without subjecting him to financial ruin.") [1]

█ Thus in the case at bar neither economic need nor inability to pay are demonstrated; although it seems likely that the Anschutz and Exxon balance sheets are healthier than those of Saybolt's counsel. I do not suggest that a successful litigant must always demonstrate straitened financial circumstances to be fully compensated for attorney's fees; or that the payor must demonstrate abject penury in order to avoid such an award. I say only that, in the circumstances of this case, the need for or ability to make compensation do not complicate the fashioning of a sanction for purposes of deterrence (both particular and general), if that objective be regarded as the primary one.

As for the amounts claimed, I find them excessive in certain respects.

█ The standard to be applied in making an award of attorney's fees is one of reasonableness. *Dorey Corp. v. E.I. Du-Pont DeNemours & Co.*, 426 F.Supp. 944, 948 (S.D.N.Y.1977). To make that determination the Court must take into account the complexity of the litigation, the reputation and experience of counsel, his or her professional skill, the time involved, and the results achieved. *See, generally, City of Detroit v. Grinnell Corp.*, 560 F.2d 1093 (2d Cir.1977). In a given case, the hourly rates charged by counsel may be reasonable, but the time devoted to the litigation may not. *Tedeschi, supra* at 579 F.Supp. 663–64.

The hourly rates charged by outside counsel for Anschutz and by in-house counsel for the Exxon group are reasonable. Saybolt does not persuade me otherwise by the reference to much earlier cases, involving a significantly different professional economic climate.

█ But the Anschutz claim is subject to reduction in various respects. I disallow the claimed $2041 in fees allegedly incurred in preparing a motion to dismiss Saybolt's appeal from this Court's prior order. The correspondence exchanged between counsel, considered together with the Second Circuit's *sua sponte* dismissal of the appeal without the necessity of any motion, cast the necessity of these efforts into substantial question. I also disallow the $628 in fees occasioned by Saybolt's failure to make prompt compliance with settlement of the underlying claim. That item falls entirely outside the boundaries of the Rule 11 order.

Lastly, counsel for Anschutz devoted part of their post-third-party complaint efforts to obtain a severance and separate trial of its claims from Saybolt's claims against Exxon. That motion failed; and, while it was not so frivolous as to invite Rule 11 sanctions of its own, the prospects of the Court directing two trials in a civil case when one would suffice had to be regarded as a long shot. I reduce the claim by $5,000 on account of this unsuccessful motion.

With these deductions, I conclude that the reasonable amount of the Anschutz claim for attorney's fees and legal expenses is $24,003.95.

█ As for the claim of the Exxon group, the amount of time devoted is clearly excessive. The case did not go to trial. The Exxon group succeeded in obtaining dismissal of Saybolt's third-party claims by means of a dispositive motion. All the Saybolt witnesses had already testified by deposition before the third-party complaint was filed. In consequence, Exxon's attorneys neither prepared for nor attended any of those depositions. To be sure, counsel

---

**1.** A Title VII case like *Faraci* authorizes the award of attorney's fees as a part of costs. The purpose is compensatory, although obviously there is a deterrent effect. Rule 11's purpose is to impose a "sanction," which in my view emphasizes deterrence. Therefore the declaration in *Faraci* that, absent "financial ruin" full fees should always be awarded, does not control in the Rule 11 context.

had to read them; but the admissions of fact central to Exxon's successful motion were not complicated. Exxon took one additional deposition of an Anschutz witness and obtained some relatively brief affidavits from its own witnesses. I appreciate that Exxon counsel had to familiarize themselves with the file, but Anschutz counsel (a friendly source of information) were available for discussions, and Exxon's successful motion (particularly given the frailty of Saybolt's theories, much of which appeared from the face of the pertinent contracts) does not reasonably justify this amount of effort.

In *Tedeschi, supra*, another case which "did not go to trial, but involved a series of motions which required time for research, preparation of briefs, and appearances in court," 579 F.Supp. at 663, Judge Weinfeld confronted a claim of $49,235.75, representing 595.90 lawyers' hours, and disbursements totalling $2,327.45. He stated:

> Even taking into account that plaintiffs' actions forced the rendition of additional services, the fees requested by defendants on this application are simply out of line. While Smith Barney, "with its rich resources may well wish to try the case expensively," it may not foist its extravagances upon the unsuccessful plaintiffs.

*Id.* at 663–64 (citations omitted). Judge Weinfeld awarded a total in respect of fees and disbursements of $10,000.

In the case at bar, I reduce the claim of the Exxon group to $40,000, inclusive of fees and disbursements.

■ I regard it as a sufficient deterrent in this case to award one-half of these reduced amounts against counsel for Saybolt. I mean by that award to deter this firm particularly from transgressions of Rule 11; and to serve as a general deterrent as well. I conclude, in the exercise of my discretion, that this constitutes an appropriate sanction in this case.[2] Counsel for Saybolt are hereby enjoined from pass-

**2.** As in any situation where deterrence is the objective, a subsequent transgression may indicate that the initial sanction was insufficient.

ing any part of these awards on to their client, directly or indirectly.

If counsel for Saybolt wish to contend that, not withstanding their *prima facie* liability for sanctions as discussed *supra*, their client Saybolt should pay all or part of these awards, then I will refer the matter to a magistrate for an evidentiary hearing, report and recommendation. In that event, Saybolt will of course need to be represented by separate counsel. Present counsel for Saybolt are directed to advise the Court and other counsel of record of their intentions on this aspect of the case, in writing, within ten (10) days of the date of this opinion.

If present counsel for Saybolt indicates that they do not intend to involve Saybolt in such further litigation, or if no expression of intent is received within the specified time, then counsel for Anschutz and Exxon may settle an order and judgment consistent with this opinion on five (5) days' notice.

It is SO ORDERED.

Recidivist violators of Rule 11 may expect to pick up the entire tab.