**H & D WIRELESS LIMITED PARTNERSHIP**

v.

**SUNSPOT, et al.**

**Civ. No. H–86–1026 (PCD).**

United States District Court, D. Connecticut.

Jan. 15, 1988.

David A. Lips, Pepe & Hazard, Hartford, Conn., for plaintiff.

Mark B. Seiger, Halloran, Sage, Phelon & Hagarty, Hartford, Conn., for defendants.

## RULING ON MOTION FOR SANCTIONS

DORSEY, District Judge.

On December 3, 1987, the court granted defendants' motion for reconsideration of the court's October 18, 1987, ruling assessing them with sanctions under Fed.R.Civ.P. 11 for the filing of an action in New Mexico against plaintiff and two individuals (hereafter the "H & D parties") during the pendency of this lawsuit. Upon oral argument and consideration of an expanded record, the court amends its earlier ruling.

Plaintiff presses essentially two grounds for imposing sanctions upon defendants: (1) that defendants should have filed the New Mexico action as a counterclaim in the prior action in this court; and (2) that defendants filed the New Mexico action without a reasonable basis for the assertion of personal jurisdiction over the H & D parties in New Mexico.

### 1. *Failure to File as Counterclaim*

Both the Connecticut action and the claims filed by defendants in New Mexico arise from the same contractual relationship. Thus, defendants would ordinarily have been required to bring the New Mexico claims in Connecticut as compulsory counterclaims to the suit which was filed first, or not to bring them at all. Fed.R. Civ.P. 13(a). However, defendants argue that the filing of their motion to dismiss the Connecticut suit for lack of personal jurisdiction relieved them of any obligation to file an answer to that complaint, so that no compulsory counterclaims could exist until the motion was decided and the answer became due. *Id;* Rule 12(a) (time for answer tolled by motion). *See* J. Moore, *Moore's Federal Practice* ¶ 13.12[2], n. 1 (2d ed. 1987), citing *Seligson v. Plum Tree,*

*Inc.,* 361 F.Supp. 748 (E.D.Pa.1973). Moreover, defendants argue that, had they filed a counterclaim in Connecticut before the answer was due, the filing could have been construed as a consent to the personal jurisdiction of the Connecticut court and thus a waiver of the motion to dismiss.

While the correctness of the latter position is in doubt, it is not inherently unreasonable and is provided indirect support by *Moore's, supra,* ¶ 13.12[2].[1] *See North Branch Prod., Inc. v. Fisher,* 284 F.2d 611 (D.C.Cir.1960), *cert. denied,* 365 U.S. 827, 81 S.Ct. 713, 5 L.Ed.2d 705 (1961) (filing of counterclaim consented to jurisdiction because defendant could have filed motion to dismiss and awaited motion's disposition before any answer to complaint required). Indeed, plaintiff does not cite any legal authority which rebuts the proposition that the filing of a counterclaim before it is due consents to the exercise of personal jurisdiction by the court in which the counterclaim is filed.

Previously, this court has determined that defendants should not be sanctioned for their filing of the motion to dismiss the Connecticut action and for taking the position therein that personal jurisdiction is lacking over them here. Defendants' failure to file the New Mexico claim as a counterclaim here was an attempt to protect the position taken in their motion to dismiss, which was not an improper purpose. Given the finding that the motion to dismiss itself did not warrant sanctions, and the considerations discussed above, a competent attorney could have formed a reasonable belief, after inquiry, that the decision not to file a counterclaim in Connecticut was not unwarranted by existing law.

---

1. Paragraph 13.12[2] provides:

   Where prior to answer plaintiff's action is dismissed under Rule 12(a), there is good authority that a defendant need not plead a compulsory counterclaim. This conclusion is supported by the technical reading that a defendant's *motion* under Rule 12 suspends the time for pleading an answer, and by the express language in Rule 13 that the compulsory requirement only arises as to á *pleading.*

   On the other hand, it has been held that where defendant pleaded a counterclaim he waived any objections he may have had to service or process or jurisdiction over his person; and whether the counterclaim was compulsory or only permissive was said to be immaterial since defendants should have raised the jurisdictional objection by preliminary motion before filing an answer.

   (citations omitted; emphasis in original)

Therefore, sanctions may not be imposed for the New Mexico filing on that ground.

### 2. *New Mexico Filing* [2]

The decision not to file the claim in Connecticut is analytically and factually distinct from the filing of the New Mexico complaint itself. Defendants chose to file and prosecute their claim against the H & D parties in that forum, partly for strategic reasons, as well as for their own convenience. Rule 11 required a reasonable belief, after reasonable inquiry, that the jurisdictional allegations of the complaint were true and that the New Mexico court could validly assert personal jurisdiction over the H & D parties. Rule 11 obligations are clearly implicated in the ruling of the New Mexico federal court which found that none of the H & D parties had such contacts with that forum as to allow the assertion of personal jurisdiction consistent with the minimum contacts test required by due process. *See Wesley v. H & D Wireless*, — F.Supp. ——, No. 87–0123–JB (D.N.M. July 24, 1987) (Memorandum Opinion and Order at 3).

The New Mexico complaint alleged that the H & D parties, all of which are based in or reside in Connecticut, had transacted business in New Mexico including "the purchase of products, services, and various telephone solicitations in [that] State." New Mexico Complaint, ¶¶ 3, 4, 5. In support of those allegations, defendant Wesley filed an affidavit in the New Mexico action stating that the H & D parties had initiated contact with defendants and that the agreement at issue in the action "is dated and signed in Albuquerque." Wesley Affidavit, ¶¶ 4, 6. However, Wesley apparently had no personal knowledge of those facts

and a subsequent affidavit filed in the New Mexico action by Steve Wodlinger (one of the defendants in that action and the signatory of the agreement on behalf of H & D) states that Wodlinger signed the agreement in Connecticut, a fact which a reasonable inquiry would have determined.

As the contract was signed in Connecticut, defendants' allegation of jurisdiction in New Mexico was based solely upon telephone calls and mailings to defendants in that state made by the H & D parties for the purpose of acquiring defendants' product. *See* New Mexico Memorandum Brief in Opposition to Motion to Dismiss at 2–3 (Mar. 3, 1987). In dismissing the New Mexico action for want of personal jurisdiction, the New Mexico court stated: "The only contacts which [the H & D parties] are alleged to have had with New Mexico in connection with the business transaction at issue consist of their use of the mails and telephone in contacting [defendants], in response to [defendants'] solicitations of business in Connecticut, and in subsequently purchasing a computer system from [defendants]." New Mexico Memorandum Opinion and Order at 3. As the New Mexico court recognized, those acts alone clearly could not support jurisdiction over the H & D parties in that state.

Indeed, this conclusion should come as no surprise to defendants, as they argued the same position before this court in their own motion to dismiss the Connecticut action. *See* Defendants' Memorandum in Support of Motion to Dismiss at 6–8 (Oct. 8, 1986) (arguing that defendants' telephone calls and shipment of goods into Connecticut does not support exercise of personal jurisdiction by court here).[3] A reasonable in-

---

**2.** Neither party has raised the issue of whether this court has authority to impose sanctions for the filing in New Mexico. The action was originally filed in a New Mexico state court and removed to the United States District Court for the District of New Mexico. Because defendants continued to prosecute the action in the New Mexico federal court and because the action was transferred here, pursuant to 28 U.S.C. § 1631, this court has authority to impose sanctions for that filing either (1) in the exercise of authority over the conduct of the original Connecticut action in which both Wesley and Sun-

spot were parties throughout the relevant period; or (2) as the successor to the New Mexico court's authority over the New Mexico action itself, or both. *See* 28 U.S.C. § 1631 (action shall proceed as if filed in transferee court).

**3.** Defendants also claimed that no agents of Sunspot had visited or solicited business in Connecticut, factual claims which this court determined were false in denying the motion to dismiss. *See* Memorandum in Support of Motion to Dismiss; Ruling on Motion to Dismiss at 3 (Feb. 24, 1987).

vestigation by defendants would have disclosed that H & D's contacts with New Mexico were limited to use of the telephone and mails and did not involve solicitation of business in New Mexico or the signing of a contract there.

In their memorandum opposing sanctions, defendants based their opposition to sanctions on the argument that they reasonably believed that personal jurisdiction could not be exercised over them in Connecticut. Since oral argument, however, defendants have filed the affidavit of their New Mexico counsel, Randall W. Roberts, who filed the New Mexico action on behalf of Wesley and Sunspot. Roberts states that he had an "objective good faith belief" that there was jurisdiction "over the H & D Parties in New Mexico." In support of this conclusion, he states that he "was informed that Steve Waddlinger [sic] had originally contacted Joshua Wesley and Sunspot in the State of New Mexico. In addition, I was informed that Steve Waddlinger [sic] had actually sent individuals to the State of New Mexico to participate in the programs offered by Sunspot." Roberts Affidavit, ¶ 4.

■ However, the affidavit is not sufficiently specific to satisfy the "reasonable inquiry" standard of Rule 11, nor does it establish any basis for a finding that *defendants* made a reasonable inquiry of personnel and documents in their possession to determine whether the allegations of the New Mexico complaint were well grounded. Roberts does not state by whom he "was informed" that Wodlinger had originally contacted Wesley and Sunspot "in the State of New Mexico" or what action was taken to verify this claim. In fact, defendants produced no evidence that Wodlinger or any other H & D employee had entered New Mexico and the New Mexico court found that he had only contacted Sunspot *by telephone* in response to Sunspot's solicitations. New Mexico Memorandum Opinion and Order at 3; *compare* Ruling on Motion to Dismiss at 4–5 (Feb. 24, 1987). Even if Sunspot's attorneys were misinformed of those facts, as the Roberts affidavit suggests, neither they nor Sunspot

and Wesley were thereby relieved of the obligation to make a reasonable inquiry of sources of information to which they had access in order to determine whether their allegations were well founded. Nothing in the record demonstrates that Wesley or Sunspot made any such inquiry or that Wesley had a factual basis for his affidavit filed in New Mexico. *See Olga's Kitchen of Hayward, Inc. v. Papo*, 108 F.R.D. 695, 701–02 (D.Mich.1985) (burden of demonstrating reasonable inquiry), *rev'd in part in unpublished opinion*, 815 F.2d 79 (1987).

■ The court has found that a reasonable belief adequately supported defendants' filing of the motion to dismiss in Connecticut and thus Rule 11 sanctions were not required for that filing. However, filing of the New Mexico action is a different matter. First, defendants filed the New Mexico action approximately two months after they had been served in the Connecticut action. While the motion to dismiss was filed under time pressure, defendants had ample time to investigate the H & D parties' contacts with New Mexico before filing the action in New Mexico. They also had the opportunity for discovery in Connecticut. Second, the foreseeable consequences of an unjustified New Mexico filing were more serious than those of the motion to dismiss. The H & D parties were required to defend a lawsuit in New Mexico, far removed from their home base; attention was distracted from the merits of the prior action in Connecticut; and the Connecticut action has been delayed by the transfer and consolidation of the New Mexico case. Third, the filing of the New Mexico complaint placed upon Sunspot and Wesley the responsibility to ascertain that a reasonable basis existed to invoke the jurisdiction of the New Mexico court. *See Miller v. Schweickart*, 413 F.Supp. 1059, 1061 (S.D.N.Y.1976). In contrast, the filing of the motion to dismiss the Connecticut action merely put H & D to its proof on the issue exercise of jurisdiction over defendants here.

Finally, defendants' rationale for litigating their action in New Mexico evaporated

when this court denied their motion to dismiss the Connecticut complaint for lack of personal jurisdiction on February 21, 1987. At that point, defendants could have filed a counterclaim with their answer without consenting to jurisdiction in Connecticut. Also, the court's ruling on the motion to dismiss determined against defendants several factual issues which they relied upon to support jurisdiction in New Mexico. For example, it was found that the licensing agreement was signed in Connecticut and not New Mexico and that agents of Sunspot had—contrary to defendants' claims—conducted extensive solicitation of business in Connecticut. Defendants did not promptly bring this court's ruling to the attention of the New Mexico District Court.[4]

The New Mexico court did not dismiss the action before it until July 24, 1987. Defendants continued to oppose the dismissal of that action and its transfer to this court, despite the obvious precariousness of their position with respect to personal jurisdiction over H & D in New Mexico, the clear efficiency advantages in transferring the case to Connecticut, the continuing hardship to the H & D parties of defending the New Mexico lawsuit, the complexity and distraction of the pendency of the dual litigation, and the potential for delay of the litigation.[5] Because defendants have not demonstrated a reasonable basis for the filing in New Mexico, nor a reasonable inquiry into the facts and law relied on as a basis for that filing, nor for requiring the H & D parties to answer in that court, and because they persisted in opposing the mo-

tions to dismiss and transfer when subsequent developments and opportunities to learn facts contraindicated the propriety of the opposition, the defendants[6] will be assessed sanctions for that filing based upon the reasonably incurred costs to H & D of defending the suit in New Mexico.

*Conclusion*

■ In fashioning an appropriate sanction for violations of Rule 11, the court retains broad discretion. *Anschutz Petroleum Marketing v. E.W. Saybolt & Co.,* 112 F.R.D. 355, 358 (S.D.N.Y.1986), interpreting *Eastway Const. Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir.1985).

Based upon the affidavits submitted by plaintiff, the court awards sanctions in the amount of $5,242.87, representing fees and costs paid by plaintiff to its New Mexico counsel. The court finds the New Mexico counsel fees represent a reasonable hourly rate and a reasonable expenditure of time in defending the New Mexico action. With respect to the fees of plaintiff's Connecticut counsel for monitoring the New Mexico defense, the court finds this work to be duplicative of that of New Mexico counsel as many of the affidavits filed in New Mexico were also filed here in opposition to defendants' motion to dismiss.

Further sanctions are not warranted for the costs of litigating the Rule 11 issues. Defendants' opposition to sanctions was neither unreasonable nor interposed for an improper purpose and defendants prevailed in opposing sanctions for the filing of the motion to dismiss the Connecticut action.

---

**4.** On March 3, 1987, defendant Wesley filed an affidavit in the New Mexico action in which he stated that defendants had filed a motion to dismiss the Connecticut action because "neither Wesley nor Sunspot have transacted business within the State of Connecticut" and attached a copy of the motion to dismiss. Wesley Affidavit, ¶ 6 (New Mexico Docket Item 12, Mar. 3, 1987). The affidavit makes no mention of this court's February denial of that motion and did not include a copy of that ruling.

**5.** With respect to this period, Rule 11 imposes a continuing duty upon counsel to re-evaluate the factual and legal basis for earlier certifications under the rule. *See, e.g., Woodfork v. Gavin,* 105 F.R.D. 100, 104 (N.D.Miss.1985).

**6.** The sanctions are assessed against defendants and not counsel. The New Mexico pleadings were not signed by counsel appearing for defendants in this court. Any benefit which could have been anticipated to result from the New Mexico filing would have redounded to defendants in terms of convenience and cost and not to Connecticut counsel, but rather to their detriment. The filing seems to have been caused at least in part by defendants' failure to investigate their own records and personnel and by their ungrounded statements of facts to New Mexico counsel. *See Olga's Kitchen,* 108 F.R.D. at 705–06. It is also significant, although not controlling, that the motion for sanctions is directed against defendants and not counsel.

The imposition of sanctions for this opposition would not serve the deterrent purposes of Rule 11. *See Anschutz,* 112 F.R.D. at 360 (awarding one half of reduced amount of fees as "sufficient deterrent").

SO ORDERED.