Anthony W. TEDESCHI and Lois Tedeschi, Plaintiffs,

v.

SMITH BARNEY, HARRIS UPHAM & CO., INC., Martin S. Berglas and John Maine, Defendants.

No. 81 Civ. 6938.

United States District Court,
S.D. New York.

Jan. 17, 1984.

---

Merrill J. Chapman, New York City, for plaintiffs.

Kramer, Coleman & Rhine, New York City, for defendants; Howard I. Rhine, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

This action was the aftermath of an arbitration proceeding, the parties to which were Anthony W. Tedeschi ("Tedeschi"), a registered broker, and his former employer, Smith Barney, Harris Upham & Co., Inc., an investment broker. The basic issue submitted to the arbitrators was whether Tedeschi, as the account executive servicing the account of a customer knew or should have known, and failed to report,

that the latter ("the defalcating customer") had received stock to which he was not entitled. Smith Barney sought recovery from Tedeschi for the loss sustained as a result of the transaction and Tedeschi interposed a counterclaim for defamation of character. Neither party prevailed upon the respectively asserted claims. Smith Barney was represented in the proceeding by Martin S. Berglas ("Berglas"), assistant general counsel on its legal staff. Tedeschi was represented by Merrill J. Chapman ("Chapman").

Soon after the termination of the arbitration Tedeschi, represented by Chapman, commenced this action against Smith Barney, Berglas and John Maine ("Maine"), the manager of the Smith Barney branch where plaintiff had been employed who had testified before the arbitrators with respect to · matters pertaining to the defalcating customer's account. The complaint, among other matters, alleged that when Maine learned that Tedeschi decided to leave Smith Barney to become affiliated with another investment firm, Maine threatened to sue Tedeschi for money owed by the defalcating customer; that thereafter Smith Barney instituted the arbitration proceeding under the New York Stock Exchange rules. The amended complaint[1] sought recovery of damages under five separate claims:

(1) false and malicious prosecution because the arbitration was instituted without probable cause;

(2) abuse of process because Smith Barney had, prior to the arbitration, instituted an action against the defalcating customer in a New Jersey state court and that action was its sole remedy;

(3) defamation based upon an unsigned employment verification questionnaire allegedly prepared by Maine that falsely stated Tedeschi had been "discharged" by Smith Barney and that he was of "questionable loyalty and ethics";

(4) fraud on the court (the arbitration panel) allegedly committed by Berglas in violation of New York Judiciary Law § 487; and

(5) emotional, mental and psychic distress.

A sixth and separate claim was asserted on behalf of Lois Tedeschi, plaintiff's wife, seeking recovery of damages because, as she alleged, by reason of defendants' conduct her husband became "ill, sick, nervous, irritable" and as a result she was deprived of his services as a husband and a father to their children.

After a series of motions made by the defendants, this Court eventually dismissed all plaintiffs' claims and judgment was entered in favor of the defendants. Familiarity is assumed with the various rulings and other actions taken, which set forth the reasons therefor.[2]

The defendants now move for an order pursuant to 28 U.S.C. § 1927, Rule 11 of the Federal Rules of Civil Procedure[3] and

---

**1.** Leave was granted to serve an amended complaint.

**2.** 548 F.Supp. 1172 (1982) (plaintiffs' claims of malicious prosecution, abuse of process and infliction of emotional, mental and psychic distress not actionable; statement by defendants' attorney to arbitration panel that a third-party complaint had been filed against a former employee in a related action also not actionable); 95 F.R.D. 182 (Aug. 18, 1982) (in view of defendants' pending motions to dismiss five of six causes of action and for partial summary judgment as to remaining cause, plaintiffs were not authorized under Rule 41(a)(1)(i), Fed.R.Civ.P., to enter unilateral voluntary dismissal dismissing balance of claim of fraud by attorney upon arbitration panel).

**3.** The Rule was amended effective August 1, 1983, subsequent to the date of this motion. Prior to the amendment the Rule provided that the signature of an attorney constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay. "If ... signed with intent to defeat the purpose of this Rule, it may be stricken as sham and false and the action may proceed as though the pleading had not been served. For a violation of this Rule an attorney may be subjected to appropriate disciplinary proceeding."

The 1983 amendments to the rule were "intended to reduce the reluctance of courts to impose sanctions, by emphasizing the responsibilities of the attorney and reenforcing those obligations

the inherent equitable power of the Court, for an award of reasonable attorneys' fees and costs to be assessed against plaintiffs and Chapman. While under the traditional "American Rule" each side ordinarily bears its own litigation fees and expenses, the Supreme Court has excepted the instance where the losing party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons ...." [4] Our Court of Appeals has observed that the exception is to be applied with caution so that those with legitimate claims are not deterred from their enforcement, but it must be enforced in appropriate cases to spare parties the financial expense and waste of time in defending against baseless allegations.[5]

■ Preliminarily, procedural objections are advanced to defeat the motion. First, it is argued that the motion seeks to alter or amend the final judgment and was not made within ten days after its entry as required by Rule 59(e) of the Federal Rules of Civil Procedure. However, the Supreme Court has held that Rule 59(e) is inapplicable to a post judgment request for counsel fees made pursuant to 42 U.S.C. § 1988.[6] There is no sound basis for applying a different rule in an action where the fees are sought under the authority of the Federal Rules of Civil Procedure and the Court's inherent equitable power.[7] The application for fees "raises legal issues collateral to the main cause of action—the issues to which Rule 59(e) was never intended to apply." [8]

■ Next, it is contended that since this is a diversity action it presents, as the Supreme Court noted in *Alyeska*, a "very different situation," [9] and that New York State rigidly enforces the American Rule. However, despite plaintiffs' contention to the contrary, New York State does acknowledge exceptions to the rule, particularly when a litigant's malicious acts cause a person to incur legal fees.[10] But even if the New York rule were otherwise, it does not supersede the inherent equitable power of this Court, the provisions of section 1927

by the imposition of sanctions." Fed.R.Civ.P. 11 advisory committee note (cites omitted). The amendment provides:

The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion, or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant. If a pleading motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

The amendments are not applicable to this motion, but in large part merely emphasize or make explicit authority the Court had under the previous rule and under its equity powers. *See* Fed.R.Civ.P. 11 advisory committee notes.

4. *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 258–59, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975), *citing F.D. Rich Co. v. U.S.,* 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974); *Vaughan v. Atkinson,* 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1960). *See also Roadway Express Inc. v. Piper,* 447 U.S. 752, 765–66, 100 S.Ct. 2455, 2463–64, 65 L.Ed.2d 488 (1980) (American Rule does not apply when opposing party acted in bad faith); *Browning Debenture Holders' Committee v. DASA Corp.,* 560 F.2d 1078, 1087 (2d Cir.1977).

5. *Nemeroff v. Abelson,* 704 F.2d 652, 654 (2d Cir.1983).

6. *White v. New Hampshire Dept. of Employment Security,* 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982).

7. *See Obin v. District No. 9 of Int'l Ass'n of Machinists and Aerospace Workers,* 651 F.2d 574 (8th Cir.1981).

8. *White, supra* note 6, 455 U.S. at 451, 102 S.Ct. at 1166.

9. *Supra* note 4, 421 U.S. at 259 n. 31, 95 S.Ct. at 1622–23 n. 31.

10. *See Harradine v. Board of Supervisors,* 73 A.D.2d 118, 425 N.Y.S.2d 182 (4th Dep't 1980).

of Title 28 and Rule 11 of the Federal Rules of Civil Procedure. Once the litigation was instituted in this Court, plaintiffs, as well as the defendants, were subject to those and other authorities which govern and apply to their conduct and that of their counsel. Thus, plaintiffs' procedural challenge to the motion fails and we consider it on the merits.

■ An essential requirement underlying fee shifting, contrary to the general American Rule, is a finding of bad faith on the part of the unsuccessful litigant. An action is brought in bad faith when the claim is entirely without color and has been asserted wantonly, for the purpose of harassment or delay, or for other improper reasons.[11] The bad faith exception justifying an award of counsel fees and other expenses of the litigation extends both to the filing and the prosecution of the litigation.[12] The sanction is imposed under the court's inherent equitable power when the interests of justice so require.[13]

■ The assessment of fees for bad faith conduct, when exercised under the court's equitable power, may be imposed upon the errant litigant and his lawyer.[14] On the other hand, under Rule 11, which also invokes a bad faith concept[15] the assessment of fees may be imposed only against the attorney. Similarly, under section 1927 of Title 28, the thrust of which is "to curb dilatory practices and the abuse of court processes by attorneys,"[16] it is the lawyer who is personally taxed with the "excess costs, expenses and attorneys' fees" reasonably incurred where the lawyer "unreasonably and vexatiously" multiplies the proceedings.

■ Determination of the motion now before the Court requires a concerned and balanced judgment. If granted, it imposes financial sanctions upon both the unsuccessful litigants and their lawyer, but more important, in the case of the lawyer it carries with it condemnation of his professional conduct. Taking into account all relevant matters, this Court, sensitive to its heavy responsibility, is persuaded that this action was instituted in bad faith, without a legal or factual basis to support the asserted claims, with a possible exception of that of false defamation,[17] and that the litigation activities that followed were vexatious and intended to harass the defendants. Each of the other claims was patently without substance and color of law. No reasonable attorney could have concluded that allegations supporting the claims might be established.[18] The attorney's conduct was particularly flagrant since he represented Tedeschi at the arbitration hearing. This was not a case where the attorney had to rely upon information received from the client and yet to be established. He knew, by reason of his representation of Tedeschi in the arbitration, all the facts upon which the claims in this action were advanced and must have known the claims were groundless. The conclusion is warranted that the commencement and prosecution of the suit were intended as an in terrorem force upon the defendants after neither party had prevailed in the arbitration proceeding.

The egregious conduct of plaintiffs and their attorney is underscored by what can only be described as the reckless and mendacious allegation leveled in count four

11. *Browning Debenture Holders' Committee, supra* note 4, at 1088.

12. *Roadway Express Inc., supra* note 4, 447 U.S. at 766, 100 S.Ct. at 2464 (1982); *Hall v. Cole,* 412 U.S. 1, 15, 93 S.Ct. 1943, 1951, 36 L.Ed.2d 702 (1973); *Browning Debenture Holders' Committee, supra* note 4, at 1088.

13. *Hall v. Cole, supra* note 12, 412 U.S. at 4, 93 S.Ct. at 1945.

14. *Roadway Express Inc., supra* note 4, 447 U.S. at 766, 100 S.Ct. at 2464.

15. *Nemeroff v. Abelson,* 620 F.2d 339, 350 (2d Cir.1980); *see. also Miller v. Schweickart,* 413 F.Supp. 1059 (S.D.N.Y.1976).

16. *Colucci v. New York Times Co.,* 533 F.Supp. 1011, 1013 (S.D.N.Y.1982).

17. In fact, the claim was dismissed because it was barred by the statute of limitations.

18. *Nemeroff, supra* note 15, at 348.

against Berglas, the attorney who represented Smith Barney at the arbitration. He was charged with conduct designed to deceive a judicial forum—in this instance the Board of Arbitration—a claim authorized under New York law, which if upheld is a misdemeanor and imposes treble damages in favor of the injured party.[19] With respect to one portion of this claim the Court, in granting defendant's motion to dismiss, stated:

The plaintiffs' claim herein is based upon statements made by defendant Berglas, the attorney representing Smith Barney, to the arbitration panel, the substance of which is that in the New Jersey action instituted by Smith Barney against the defalcating customer he in turn asserted a third-party complaint against Tedeschi. Plaintiffs argue that because of procedural defects with respect to the service and filing of the third-party complaint, that the complaint did "not exist" and was a "false and fraudulent document." This allegation is a distortion of what was said with respect to the third-party complaint and is without substance. A third-party complaint against Tedeschi was prepared by the defalcating customer's attorney and served upon the attorney for Smith Barney, the plaintiff in the New Jersey action. A copy of the complaint is part of this record. Whatever the merits of the claimed defects in the service or filing of the complaint, this does not detract from the truth of the statement made by the attorney at the arbitration that a third-party complaint was in existence and had been submitted. The simple fact that will not down is that a third-party complaint had been served upon the attorney

for the plaintiff in the New Jersey action and was in existence at the time Berglas made the statement. Indeed, at the arbitration hearing, Tedeschi's attorney, who represents him in this action, acknowledged that he had received a copy of the third-party complaint against his client. *The concept of this claim borders on the frivolous and plaintiffs' counsel is reminded of his obligation under Rule 11 of the Federal Rules of Civil Procedure.*[20]

It is not without significance that despite the reminder regarding Rule 11, as set forth above, at a hearing on a subsequent motion plaintiff's counsel stated: "I have reviewed the statute under which the claim is brought and discussed the Court's position with plaintiffs and they decline to withdraw the claim No. 4 alleging fraud on the Court for the following reasons: (a) it is the major claim in the complaint and allows treble damages." Thus, plaintiffs bear equal responsibility with the attorney for pressing this baseless claim.

Thereafter, the remaining portion of the fraud charge against the attorney was dismissed upon the finding that: "Despite allegations that false statements and perjured testimony were introduced by Berglas, no proof whatsoever of these charges has been adduced."[21] Not only were the charges against Berglas wholly unfounded and vicious, they forced Smith Barney to incur additional legal expenses because it had to engage outside counsel to represent it in this action to avoid a conflict of interest claim.

Evidence of bad faith is heightened by the fact that during the entire course of the litigation, despite the serious charges

**19.** New York Judiciary Law § 487:

§ 487. MISCONDUCT BY ATTORNEYS
An attorney or counselor who:
1. Is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party; or,
2. Wilfully delays his client's suit with a view to his own gain; or, wilfully receives any money or allowance for or on account of any money which he has not laid out, or becomes answerable for,

Is guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action.

**20.** *Tedeschi, supra* note 2, 548 F.Supp. at 1175–76 (emphasis added, footnotes deleted.)

**21.** *Tedeschi v. Smith Barney, Harris Upham & Co.,* 81 Civ. 6938, Memorandum Opinion (S.D. N.Y. March 23, 1983).

leveled against the attorney and the co-defendants, plaintiff's counsel never noticed the deposition of any of the defendants or any purported witness.[22] There was not even a "meandering" through the pre-trial procedure.[23]

Entirely apart from the finding of bad faith, which warrants the assessment of legal costs against the litigants and their attorney, there is sufficient evidence to impose sanctions against the attorney for acts and conduct that transgress both Rule 11 and section 1927 of Title 28. He repeatedly failed to attend sessions on time, necessitating delays and wasting the time of opposing attorneys; he failed to adhere to stipulations; he made frivolous motions seeking reargument of decided motions; and he sought to avoid determination of the merits of pending motions made by the defendants. Some idea of the obstructive tactics employed by plaintiffs' counsel may be garnered by a motion he made to transfer the action to the District of New Jersey under 28 U.S.C., § 1404, on "the eve of a hearing on defendants' motion to dismiss various causes of action which defendants made almost two months ago." [24] Indeed, this Court observed it was the first time in its "experience where plaintiff commenced an action in a district and thereafter moved to transfer the action to another district, his home district." [25] The motion was denied and plaintiffs' motion for leave to serve an amended complaint was granted, but because of plaintiffs' obstructive conduct, such leave was conditioned upon payment of $250 (which, up to the time the instant motion was heard, had not been paid).

Measured by any standard, the conclusion is compelled that this action, from beginning to end, was "simply for the sake of burdening an opponent with unnecessary expenditures of time and effort [and] clearly warrants recompense for the ... outlays attributable thereto." [26] The legal fees and costs sought should be assessed against both the litigants and their attorneys.

The defendants state that the total legal fees incurred for the defense of this suit from its inception to conclusion was $49,-235.75, representing 595.90 hours, of which 188.75 was time of partners and 407.15 was associates' time; and that the disbursements totalled $2,327.45. Even considering current escalating charges for professional services and hourly rates for partners and associates, by any proper standard the sum expended by defendants for resisting plaintiffs' claim is as excessive as plaintiffs' charges against the defendants were ill founded. This Court is familiar with the nature of the services rendered, and the professional skill required, and has some idea of the time required [27] to protect the interests of the defendants against plaintiffs' unjustified lawsuit. The case did not go to trial, but involved a series of motions which required time for research, preparation of briefs, and appearances in court. Undoubtedly, the legal costs incurred were increased by the obstructive tactics of plaintiffs' counsel which resulted in delays and thus imposed additional time charges, and by the need for outside counsel because the claim against Berglas disqualified him from his usual representation of Smith Barney as house counsel. The time charged and billed Smith Barney for the services rendered on the Berglas claim alone totalled $18,976.25. Even taking into account that plaintiffs' actions forced the rendition of additional services, the fees

**22.** *See Nemeroff, supra* note 5, at 660.

**23.** *Id.*

**24.** *Tedeschi v. Smith Barney, Harris Upham & Co.,* 81 Civ. 6938, Memorandum Opinion (S.D. N.Y. April 20, 1982).

**25.** *Id.*

**26.** *Lipsig v. National Student Marketing Corp.,* 663 F.2d 178, 181 (D.C.Cir.1980).

**27.** *Boe v. Colello,* 447 F.Supp. 607, 610 (S.D.N.Y. 1978); *Blank v. Talley Indus., Inc.,* 390 F.Supp. 1, 4 (S.D.N.Y.1975).

requested by defendants on this application are simply out of line. While Smith Barney, "with its rich resources may well wish to try the case expensively," [28] it may not foist its extravagances upon the unsuccessful plaintiffs.[29]

The assessment of fees against a non-prevailing litigant must be fair and reasonable based upon the particular circumstances of the case, including the financial resources and ability of the parties against whom the award is made and the financial status of the prevailing party. In sum, the equities of the situation are to be considered to assure that although the purpose of discouraging bad faith, vexatious suits is enforced, a losing party is not subjected to financial ruin.[30]

The Court is of the view, taking into account all the appropriate circumstances and facts, that a fair and reasonable fee, including the disbursements for the services required in defending against this bad faith and vexatious lawsuit is the sum of $10,000, to be assessed against plaintiff Anthony W. Tedeschi, in the sum of $4,000, against Lois Tedeschi in the sum of $1,000, and against their attorney, Merrill J. Chapman, in the sum of $5,000.

Submit order in accordance with the foregoing.

---

**28.** *Farmer v. Arabian American Oil Co.,* 285 F.2d 720, 722 (2d Cir.1960).

**29.** *Farmer v. Arabian American Oil Co.,* 31 F.R.D. 191 (S.D.N.Y.1962), *rev'd,* 324 F.2d 359 (2d Cir.1963), *rev'd,* 379 U.S. 227, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964).

**30.** *Colucci, supra,* note 16, at 1012–13. *See also Cohen v. West Haven Board of Police Commissioners,* 638 F.2d 496, 505 (2d Cir.1980); *Faraci v. Hickey-Freeman Co.,* 607 F.2d 1025, 1028 (2d Cir.1979).