Stanley WIELGOS, etc., Plaintiff,

v.

COMMONWEALTH EDISON
COMPANY, et al.,
Defendants.

No. 84 C 1222.

United States District Court,
N.D. Illinois, E.D.

July 10, 1989.

A. Denison Weaver, Chicago, Ill., for Wielgos.

George Spellmire, Keith L. Hunt, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for A. Denison Weaver.

Gary M. Elden, Philip C. Stahl, George R. Dougherty, Grippo & Elden, Chicago, Ill., for Commonwealth Edison.

W. Donald McSweeney, Mitchell S. Rieger, Allan Horwich, Frederick J. Sperling, Schiff Hardin & Waite, Chicago, Ill., for Underwriter Defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Stanley Wielgos ("Wielgos") initially filed this class action against Commonwealth Edison Company ("Edison") and several underwriters ("Underwriter Defendants"), asserting violations of Securities Act of 1933 § 11, 15 U.S.C. § 77k ("Section 11"). After the litigation had experienced an extended and checkered history (most of it before this Court's then colleagues Honorable Thomas McMillen and Honorable George Leighton), this Court granted defendants' motion for summary judgment in "Opinion I," 688 F.Supp. 331 (N.D.Ill.1988).

Edison then moved for the imposition of sanctions as to part of Wielgos' litigation activities, seeking to recover attorney's fees and expenses[1] under Fed.R.Civ.P. ("Rule") 11, 28 U.S.C. § 1927 ("Section 1927") and Section 11(e). This Court granted that motion in "Opinion II," 123 F.R.D. 299 (N.D.Ill.1988).[2]

Wielgos then moved for reconsideration of Opinion II,[3] a motion this Court granted orally to the limited extent of "the quantification of the award, not the substance of

---

1. Edison's motion included fees and expenses incurred by the Underwriter Defendants as well, because Edison had either paid those items directly or reimbursed Underwriter Defendants for them. This opinion will follow the parties' usage in referring to "Edison" as a collective term for all defendants unless otherwise specified at particular points during the discussion.

2. Further citations to the Opinions will take the form "Opinion I at ——" or "Opinion II at ——," referring to the page number but omitting the volume number in F.Supp. or F.R.D. It will be assumed the reader is fully familiar with both Opinions, so the facts and history of the case will not be repeated.

3. Although the motion for reconsideration was brought in Wielgos' name, the current memorandum stating objections to the fee award (those objections also raise the very question whether fees have as yet been awarded!) bears the name of A. Denison Weaver ("Weaver"), Wielgos' counsel. Because liability as between the two remains joint and several, this Court will continue to treat all papers as tendered by Wielgos as well as Weaver. In like manner, this opinion consistently refers to "Wielgos" in speaking of all conduct and decisions, whether ascribable to either Wielgos or Weaver or both.

it" (December 9, 1988 Tr. 7). Nevertheless, Wielgos has again sought to raise a number of issues as to the basic propriety of a fees sanction as well as to its quantification. For the reasons stated in this memorandum opinion and order, Wielgos' new motion for reconsideration is denied and this Court grants Edison's requests for (1) 40% of its fees encompassed within its original request, (2) all fees incurred since those embraced within that original request and (3) all expenses referred to in both fee requests.

### Background and Procedural History

While this case was still on Judge Leighton's calendar, Wielgos' then-pending Second Amended Complaint ("SAC") had alleged Edison's shelf Registration Statement filed with the SEC on September 22, 1983 had violated, in addition to Section 11, Securities Exchange Act of 1934 § 10(b) (15 U.S.C. § 78j(b)) and SEC Rule 10b–5 (17 C.F.R. § 240.10b-5) (together "Section 10(b)"). When both sides moved for summary judgment on the SAC, Judge Leighton denied Wielgos' motion and requested oral argument on defendants' motion—but before that could occur Wielgos moved to file a Third Amended Complaint ("TAC"). That proposed pleading abandoned the Section 10(b) claim and many of the allegations of the Section 11 claim. Over defendants' strenuous objections Judge Leighton granted leave to file the TAC.

Both sides then renewed their summary judgment motions, this time directed to the TAC.[4] It was at that point that this Court inherited the case and, in Opinion I, held that defendants must prevail entirely on the merits of Wielgos' claims.[5] Thereafter Edison moved for payment of attorney's fees and expenses for its having had to defend against the allegations in the SAC that were later abandoned in the TAC. Opinion II at 307 granted that motion under Rule 11, Section 1927 and Section 11(e), finding Wielgos and his counsel Weaver

jointly and severally liable in the sum of (1) $159,035 plus (2) fees and expenses on the fees motion plus (3) unrecovered expenses in the Bill of Costs.

Edison has continually offered to limit the amount of its fee request to a modest portion of the actual sum incurred, so long as Wielgos did not contest the amount requested. When Edison originally brought its motion, it offered to limit the total liability to $40,000 (Defendants' Motion for Costs and Attorneys' Fees ¶ 8). When Wielgos requested briefing on that motion, Edison offered to stipulate to fees totalling at most $130,000. Ultimately Edison requested only 40% of the actual fees incurred (that is, 40% of $384,246) and 75% of expenses (that is, 75% of $7,116). As already stated, Opinion II granted Edison its requested relief—$159,035. On Wielgos' motion for reconsideration, Edison renewed its request for 40% of fees, although it also suggested the possibility the award might range up to 70%—a suggestion flowing naturally from this Court's warning that if Wielgos' continual objections to the fee award were to force this Court to resolve the dispute, rather than the amount being agreed upon by the parties, this Court would not be bound by the 40% reduced measure of Edison's recovery (December 9, 1988 Tr. 5).

### Wielgos' Motion for Reconsideration

Wielgos' arguments seeking reconsideration fall into two categories:

 1. Monetary sanctions are inappropriate in this case.

 2. Edison's requested amount is grossly excessive.

But those arguments must be viewed against the backdrop of the limited function of the so-called "motion for reconsideration" (a motion without specific sanction in the Rules), as so cogently stated in *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D.Va. 1983):

---

**4.** Edison also sought judgment on a Rule 11 and Section 1927 counterclaim for having been required to defend the Section 10(b) claim.

**5.** Opinion I also dismissed Edison's counterclaim on purely procedural grounds that did not inhibit its ability to seek the same relief in the present form.

The motion for reconsideration would be appropriate where, for example, the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court. Such problems rarely arise and the motion to reconsider should be equally rare.[6]

■ Certainly the quantification of fees was "outside the adversarial issues presented to the Court by the parties" in the initial motion, so it might well qualify for reconsideration if that procedure were necessary to deal with the issue.[7] But Wielgos. attempts to go far beyond that: His current submissions also tender new legal theories on the appropriateness of any imposition of monetary sanctions—theories never advanced in Wielgos' original memorandum on the appropriateness of sanctions and therefore inappropriate as a subject of the present motion (*Publishers Resource*, 762 F.2d at 561).

There seems every likelihood that this dispute will not end here (Wielgos has already appealed this Court's decision on the merits). Out of an abundance of caution and to make this Court's views available for review on every potentially available ground—whether procedurally barred or not—this opinion will deal (in some cases quite swiftly) with all such matters. Nonetheless, such treatment should not be mistaken for a disavowal of the independent *Publishers Resource* ground for rejecting

Wielgos' newly-proffered arguments that should have been made, but were not, the first time around.

*Appropriateness of Monetary Sanctions*

Wielgos advances four arguments as to the appropriateness of any monetary sanctions:

1. Such sanctions are improper under Rule 11 in this case.

2. This Court must conduct an evidentiary hearing to .impose sanctions at all.

3. Edison's fee request is unreasonable and therefore should be denied in its entirety.

4. Rule 11 is unconstitutional.

, This opinion deals with each argument in turn.

1. Rule 11 Remedy

■ Wielgos argues that the nature and amount of sanctions imposable under Rule 11 is governed by the set of factors established in *Eastway Construction Corp. v. City of New York*, 637 F.Supp. 558, 571 (E.D.N.Y.1986), *modified on other grounds*, 821 F.2d 121 (2d Cir.1987). There is really no need to parse those factors. Apart from any other reason, Opinion II clearly found liability under Section 11(e) and Section 1927 as well as Rule 11—and attorneys' fees and expenses are specifically the order of the day under those sections (Opinion II at 306 n. 15). Though that alone is dispositive, this Court is obligated to point out that even absent such Section 11(e) and Section 1927 liability, the course of action taken by Wielgos—succinctly characterized in Opinion II at 306-07—mandates the imposition of attorney's

---

6. This Court has frequently cited or quoted the formulation in *Above the Belt*—see, e.g., *Quaker Alloy Casting Co. v. Gulfco Industries, Inc.,* 123 F.R.D. 282, 288 (N.D.Ill.1988). Nor is this Court alone in that view of the limited role of such a motion—see, e.g., *Publishers Resource, Inc. v. Walker–Davis Publications, Inc.,* 762 F.2d 557, 561 (7th Cir.1985), quoting an earlier opinion by this Court that had then been adopted by the Seventh Circuit on appeal.

7. On the first round of briefing on the subject of sanctions, it appeared to this Court that Wielgos was not challenging what seemed an eminently reasonable willingness on Edison's part to ac-

cept a deep discount, out of Edison's apparent desire to avoid spreading the conflagration any further. That impression, plus the surface reasonableness of Edison's less–than–$200,000 claim for what appeared to be an obviously greater legal effort, caused this Court's initial approval of Edison's request. When Wielgos then put the amount in issue—as was his right— this Court might more accurately be said to have been requested to *consider* rather than to *reconsider* the amount allowable. There is no question that the issue was an open one, though, so the precise label is less important than the substance of the matter.

fees under Rule 11 too. Although some panels on our Court of Appeals have on occasion stressed other goals to be served by Rule 11, that Court's most recent opinions have expressly characterized the Rule as a fee-shifting device to be used to correct litigation abuses (see *Borowski v. DePuy, Inc.*, 876 F.2d 1339, 1340 (7th Cir. 1989) and cases cited there).

### 2. Evidentiary Hearing

■ Wielgos argues an evidentiary hearing is required before a court can decide to impose a fee sanction at all, presumably as a matter of due process. However, the primary case cited by Wielgos clearly indicates that the opposite is true. *Donaldson v. Clark*, 819 F.2d 1551, 1560 (11th Cir. 1987) (en banc) held:

> Rule 11 does not require that a hearing separate from trial or other pretrial hearings be held on Rule 11 charges before sanctions can be imposed; indeed the Advisory Committee Note indicates that the contrary is preferable....

In fact, the continued discussion in *Donaldson, id.* at 1561 aptly describes the specific kind of situation this Court dealt with on the sanctions liability issue as one in which a hearing beyond that afforded Wielgos would have been "not only unnecessary but also a waste of judicial resources."

Even more to the point, our own Court of Appeals has stated and restated the like conclusion that Rule 11 does not call for an evidentiary hearing in this type of situation (*Borowski*, 876 F.2d at 1340; *Brown v. National Board of Medical Examiners*, 800 F.2d 168, 173 (7th Cir.1986)). In *Brown*, as here, both sides briefed the motion fully and a motion for reconsideration was entertained. No evidentiary hearing as to liability is required here, and this opinion deals hereafter with the subject of evidentiary requirements as to the amount of the award.

### 3. Denial In Toto of Unreasonable Fee Requests

■ Wielgos contends a fee request that proves unreasonably excessive should trigger the complete denial of the request. Once again the case on which Wielgos places heaviest reliance delivers quite the contrary message. *In re Central Ice Cream Co.*, 836 F.2d 1068, 1074 (7th Cir. 1987) specifically held that although a bloated fee request under 42 U.S.C. § 1988 may result in a complete denial, no such result is permitted by Rule 11, which says the court "shall" impose a sanction. Even were this Court to find Edison's fee request to be unreasonably excessive (and it assuredly does not, particularly in view of Edison's repeatedly offered discount), that could not serve as a basis for total denial of the fee request.

### 4. Unconstitutionality of Rule 11

■ Wielgos urges Rule 11 is unconstitutional, while noting this Court's opposite conclusion in *Brandt v. Schal Associates, Inc.*, 121 F.R.D. 368, 378 (N.D.Ill.1988).[8] This Court is not now moved to change its opinion.

Wielgos argues here that *Brandt* held Rule 11 constitutional because a litigant has no constitutional right to file a frivolous claim. What he essentially expounds now is a due process argument: that he is entitled to a jury trial, evidentiary hearing and meaningful cross-examination. That position has repeatedly been rejected (see, e.g., *Donaldson*, *Borowski* and *Brown*). Rule 11 is constitutional from every perspective.

### Quantification of Fees

Wielgos also raises a host of arguments as to the excessiveness of Edison's fee request:

1. Defense counsel failed to mitigate.

2. No separate counsel was necessary to represent the Underwriter Defendants.

---

**8.** Wielgos' present counsel (not Weaver, but apparently counsel selected by Weaver's malpractice insurance carrier) is nothing if not consist-

ent. He was also the lawyer who advanced the same argument unsuccessfully in *Brandt*.

3. Some time was expended on non-sanctioned arguments.

4. Some time was expended on Edison's improper counterclaim.

5. Other time was devoted to an improper argument.

6. Weaver has been otherwise punished.

7. Defense counsel engaged in improper billing practices.

Again this opinion treats with each of those issues as posed.

### 1. Mitigation

■ Wielgos properly says Edison should not recover fees that never should have been incurred in the first place (see, e.g., *Dubisky v. Owens*, 849 F.2d 1034, 1037 (7th Cir.1988)). But that unexceptionable proposition gives way to Wielgos' failure to identify instances where Edison could have mitigated damages. Instead, bafflingly enough, Wielgos recites a history that cuts just the other way.

First, Wielgos says that Edison's counsel sent a letter *before* the SAC filing, warning that such filing might result in Rule 11 sanctions based on "groundless allegations." Yet instead of refraining from filing the SAC (as Wielgos should have known, and later events proved, would have been the proper course), Wielgos plunged boldly ahead. Thus *Edison's* attempt to mitigate (or even eliminate) Wielgos' ultimate Rule 11 liability was soundly rebuffed by Wielgos.

Wielgos then contends that despite Edison's prior knowledge of "groundless allegations," it conducted lengthy (and expensive) discovery and briefed summary judgment motions rather than promptly moving to dismiss. That argument betrays either a total ignorance or a total ignoring of the fundamental and universal standards for Rule 12(b)(6) motions to dismiss.[9] As this

Court *always* explains in Rule 12(b)(6) situations, ordinarily with this standardized footnote:

> Familiar Rule 12(b)(6) principles require this Court to accept as true all of [plaintiff's] well-pleaded factual allegations, drawing all reasonable inferences in his favor (*Marmon Group, Inc. v. Rexnord, Inc.*, 822 F.2d 31, 34 (7th Cir.1987) (per curiam)).

Judge Leighton would thus have been required to accept Wielgos' "groundless accusations" as true, and a motion to dismiss would have been doomed to fail. Indeed the very *filing* of such a motion would have been vulnerable to proper attack as makework activity—as a failure to minimize fees—if a motion like Edison's current one had ultimately ensued.

Wielgos will not be permitted to turn the mitigation issue on its head. No instance of Edison's failure to mitigate has been shown, and the argument must fail.

### 2. Separate Counsel

Wielgos also contends nothing justified the association of separate counsel for the Underwriter Defendants. Of course Edison should not be allowed to foist the burden of additional counsel on Wielgos if that represented a needless extravagance.[10] But Underwriter Defendants accurately respond that in this case separate counsel to represent their interest was not a "needless extravagance" but rather an ethical obligation.

■ Due diligence is a defense available to underwriters but *not* to issuers under Section 11 (see, e.g., *Chris–Craft Industries, Inc. v. Piper Aircraft Corp.*, 480 F.2d 341, 370 (2d Cir.1973)). Because the due diligence defense implicates the adequacy of the issuer's (Edison's) responses to the underwriters' inquiries, the same

**9.** It is difficult (though unnecessary) to decide which of those alternatives would be worse.

**10.** Nonetheless this Court is constrained to point out Wielgos' current counsel is less than forthright in citing *Tedeschi v. Smith Barney, Harris Upham & Co.*, 579 F.Supp. 657, 664 (S.D.N.Y. 1984), *aff'd per curiam*, 757 F.2d 465 (2d Cir. 1985) for the proposition that dual representa-

tion of a single financial interest is an extravagance that may not be shifted to Wielgos. *Tedeschi*, 579 F.Supp. at 662 clearly said outside counsel *is* required where a conflict of interest is involved, and the "extravagances" referred to in *Tedeschi* had nothing to do with outside counsel.

counsel could not ethically represent all defendants under the Code of Professional Responsibility (see DR 5–105). Separate counsel was not a "needless extravagance," and the $205,882 in fees incurred on behalf of the Underwriter Defendants in resisting a potential $10 million or greater liability are also compensable.

### 3. Arguments Subject to Sanctions

Edison's fees motion requested fees only for defending allegations and arguments in the SAC that were abandoned in the TAC (Opinion II at 301). However, Edison's original "bill"—its printout and calculation of time charges—included *all* legal fees incurred in connection with the original Complaint *and* the SAC.

■ Wielgos' original Complaint contained only a single count asserting violations of Section 11, a count not materially different from that later alleged in the SAC (which merely added more groundless allegations). Thus the activities of defense counsel in preparing their opposition to the original Complaint reduced pro tanto the amount of activity, and hence the amount of fees, incurred in' opposing the SAC. That renders such services compensable as directly related to the abandoned SAC claims.

On the other hand, if and to the extent that any arguments or allegations in the SAC were defended against by Edison and then reappeared in the TAC, any recovery that might be allowed to Edison for such matters would be outside the scope of its request.[11] And *that* kind of determination

would represent the most difficult and non-productive type of satellite litigation, for it would pose the seemingly near-impossible task of determining what portion of the lawyers' time—and therefore the clients' money—was spent on arguments and allegations retained in the TAC.[12]

Confronted with such prospects of constantly expanding satellite litigation and the resulting imposition of fees on fees, courts have sometimes said in effect, "Enough is enough" (see, e.g., *Muscare v. Quinn*, 680 F.2d 42, 44–45 (7th Cir. 1982)[13]). Edison, perhaps in the interest of avoiding that problem while at the same time not sacrificing entirely the policy purposes for which sanctions are imposed, has consistently asked for recovery of only a percentage of its provable fees. Even under the view most favorable to Wielgos, the requested fee award is eminently reasonable from that perspective.

### 4. Improper Counterclaim

■ Wielgos next argues that Edison's original fee request was improperly asserted as a counterclaim. But as already suggested in Opinion I at 345 and earlier in this opinion (see n. 5), that was purely a procedural rather than a substantive flaw. In real world terms, the time that Edison's counsel devoted to the legal issues when they were viewed as the basis for a counterclaim reduced pro tanto the time that had to be spent on the sanctions motion.[14] Because this opinion awards supplemental fees for prosecuting the current motion,

---

**11.** This is a substantive as well as a procedural issue. Because neither Opinion I nor Opinion II dealt with the question whether any of Wielgos' claims apart from those in the abandoned aspects of the SAC violated any of the provisions allowing the imposition of sanctions, by definition no fee-shifting could be based on those undecided matters.

**12.** No matter how meticulous a lawyer is in recording and categorizing his or her time, no one has the kind of crystal ball that would provide information about how the adversary would likely conduct future litigation activity based on future rulings by the court or based on the adversary's own litigation strategy. That means a post hoc parsing of the time records by

counsel and this Court would demand a major investment in time as well as a "what if ...?" attempt to reconstruct the litigation history.

**13.** Although *Muscare* dealt with the fees-on-fees problem in the context of a 42 U.S.C. § 1988 award, the same considerations are equally applicable to sanctions awards such as those involved in this case.

**14.** This is, of course, the same line of analysis used in the preceding section to explain why counsel's time spent on the original Complaint's claims later carried forward into the SAC—and still later abandoned by Wielgos—is recoverable on the current motion. And the analysis is just as cogent on the issue now under consideration.

award of those earlier-incurred fees is also proper.

### 5. Improper Argument

 Wielgos also contends that Edison made an argument on the TAC summary judgment motion, identical to one earlier advanced on the SAC motion, that Opinion I at 339 found "never should have been made." He therefore asks that any time devoted to that argument be eliminated from any fee award.

Wielgos is right. Litigants do not expose themselves to all manner of unlimited liability just because they have themselves engaged in sanctionable conduct—they are not outlawed by their own misconduct. And the exclusion of time spent on unreasonable responses to legally frivolous arguments is all of a piece with the general obligation of the offended litigant to minimize its damages (see, e.g., *Dubisky*, 849 F.2d at 1037).

But that does not mean Wielgos derives any economic benefit from the elimination of that single-issue time from the base for calculating the sanction award here. If Edison were seeking to collect dollar for dollar, of course, any stricken time would have to be calculated in detail to determine the net award to be taxed against Wielgos. However, the basic message of this opinion (both to this point and hereafter) is that there is so much of a cushion—the difference between (1) the total time reasonably expended, multiplied by reasonable hourly rates, and (2) the discounted sum that Edison seeks to recover—that all of the downward adjustments Wielgos can arguably obtain still leave the requested amount safely intact.

It should again be made plain that if Wielgos desires a detailed accounting of the precise amount allowable, this Court is prepared to go that route. But Wielgos must be prepared to accept the risk that the result of that procedure (including, if necessary, a full evidentiary hearing on the issues bearing on quantification of the

award) appears—from the evidence now before this Court—certain to exceed what Edison asks at this point. And if that is so, the amount of the award will assuredly be the sum of (1) the fees determined in that manner (including an appropriate delay factor, see *Missouri v. Jenkins*, —— U.S. ——, —— ——, 109 S.Ct. 2463, 2466–69, 105 L.Ed.2d 229 (1989)) plus (2) the added fees incurred in the course of making the determination.

That choice is for Wielgos to make. Unless and until such a choice is made, this Court's determination is that any downward adjustment required for the factor dealt with in this section, and for any other arguably legitimate deductions recognized elsewhere in this opinion, will still leave intact the amount of Edison's request.

One added point should be made here to forestall an anticipated objection from Wielgos' counsel, given his proper—though misdirected—concern with due process considerations. What has been said in the preceding paragraphs involves no shift away from Edison in the burden of proving the sanctionable amount—it does not convert that burden of proof into a burden of disproof on Wielgos' part. Nor does it deprive Wielgos of any right to an evidentiary hearing as to the amount of the sanction. Rather it reflects this Court's informed judgment, based on the parties' submissions, that Edison's reduction of its request to such a modest level (in relation to the actual time spent overall) has rendered an award in the requested amount eminently reasonable even with any reasonable doubts resolved in Wielgos' favor. Under those circumstances, Wielgos must proceed at his own peril if he insists on pursuing the issue to its ultimate conclusion—though that pursuit is his absolute right if he wishes to exercise it.

### 6. Other "Punishments"

Wielgos asserts several other factors should serve to reduce the award amount:

1. Weaver has suffered adverse press scrutiny.[15]

---

15. It cannot be ignored that the facts (as well as the legal principle discussed in the text) defeat Wielgos' argument in this respect. Wielgos Mem. 30 objects to Edison's press release for its

2. Edison doesn't need the money.

3. Weaver has suffered because he lost what was essentially a contingency fee case (that is, he didn't get paid).

None of those arguments is persuasive— and for a number of reasons.

■ For one thing, there is nothing to support any relevance of such considerations to the fee-shifting provisions of Section 11(e) (as contrasted with the discretionary choice of sanctions called for by Rule 11 and perhaps Section 1927). Section 11(e) specifically requires fee-shifting (Opinion II at 305 n. 12). And as for a decision on the "appropriate sanction" under Rule 11 and what a court "may" impose under Section 1927:

1. Only the first asserted factor (adverse press scrutiny) really bears on the deterrence rationale of the Rule or any comparable considerations under Section 1927. And on that score what Weaver has experienced (something that surely comes with the territory) cannot suffice as a sanction where, as here, the opposing litigant has been subjected to such major and needless expense by the Rule-violative and statute-violative conduct.

2. No deep-pocket notions can support the proposition that litigants are free to involve wealthy defendants in bootless and expensive litigation and, when caught at it, escape by saying those defendants can afford it. Deterrence as well as reimbursement calls for rejection of that argument as a way to escape fee-shifting.[16]

3. Weaver's third contention would actually encourage the filing of frivolous claims in risky contingent-fee cases. As with the second argument, that notion is unacceptable.

In sum, none of the other alleged "punishments" can be considered in reducing the fee award here.

**7. Improper Billing Practices**

Finally Wielgos identifies several allegedly improper practices by Edison that inflated the claimed fees:

1. overstaffing;

2. vague billing statements;[17]

3. use of partners for handling routine matters;

4. billing for reviewing documents; and

failure to mention that this Court "vacated the damages portion" of Opinion II on December 9, 1988. That characterization is itself hardly a model of full disclosure. Any characterization of this Court's having "vacated" the sanction against Wielgos would carry the implication that no sanctions would be imposed—a materially misleading implication, given the fact that further briefing was called for to enable reconsideration of the *amount* (and not the fact) of sanctions. But whether or not Wielgos' claimed omission was materially misleading, Edison's press release was assuredly not.

16. Of course, the other side of the coin (in this instance Wielgos' ability to pay) is often an appropriate consideration in determining both the imposition and the amount of any Rule 11 fee-shifting sanction. Here Wielgos Mem. 6 does pose that issue, asserting without evidentiary support that assigning liability to Weaver will "spell financial ruin for the plaintiff." But Edison has countered by tendering a copy of Weaver's professional liability insurance policies produced during discovery (Edison R.Mem. Exs. B and C, summarized at P.Mem. 3–4), which put the lie to the Wielgos memorandum. Those policies provide $1 million in coverage (far more than is needed to cover the award here), subject to Weaver's personal exposure only to

the first $10,000. No evidence has been proffered to support the notion that such minimal personal exposure will spell financial ruin for anyone. And if the Wielgos memorandum is perhaps seeking to distinguish between Wielgos and Weaver for that purpose (something not reflected in Mem. 6, which makes no such distinction), it would be unpersuasive in the joint-and-several-liability situation involved here.

17. In that respect Edison comments that its billing statements appear as a model of clarity when placed next to those of Wielgos' counsel. That is true but irrelevant. It is not a cogent answer to someone who objects to fee-shifting that his criticism of the applicant's recordkeeping may be a case of the pot calling the kettle black. After all, *Weaver* is not seeking a fee award (an issue on which his own recordkeeping deficiencies would be highly material). What *is* relevant is that Edison's lawyers' billing records have all the reasonable detail to be expected of such records (especially given the fact that it could not be known, when the time was being spent, that the kind of carving out now sought to be insisted on by Wielgos would be called for later—see n. 12).

5. billing for inter- and intraoffice conferences.

Of course the unjustifiable use of any or all of such practices can provide an ample basis for denying a fee award to the extent based on them. For example, the lead lawyer on a case may well charge for time spent reviewing documents (and recover for that time if sanctions are appropriate), while uncalled-for duplication of that activity by other members of a litigation "team" may not be shifted to the adversary even if the client has been willing to bear the expense. But once more the statement of such a perfectly acceptable general principle affords Wielgos no relief under the circumstances of this case.

█ Every fee petitioner of course bears the burden of establishing the reasonableness of the fee (*Blum v. Stenson*, 465 U.S. 886, 897, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984)). But as has been said so often in this opinion, Edison has requested only the lesser fraction of its fees and expenses. Wielgos has made no attempt at all to quantify the amounts assertedly attributable to improper billing practices. It does no violence to burden-of-proof principles to say that Wielgos should not be permitted, by such mere conclusory assertions, to shift to Edison the burden of proving a negative—or to shift to this Court the burden of winnowing out any arguable chaff from a mountain of detailed time entries.

Once again, to reject (or reduce) Edison's request as it has been made, this Court would have to find that such improper billing practices exist in such volume that they, together with the minor matters identified earlier in this opinion as to which Wielgos is or may be entitled to credit, more than span the $225,211 discount Edison has offered in its petition. This Court's scrutiny of the petition and its voluminous underlying data has not provided even a remote possibility that such is the case.

No matter what his procedural rights, Wielgos cannot prevail by letting matters rest in that posture. Throughout the case he has refused to heed Edison's warnings about sanctions or to accept Edison's offers of minimal fee requests. As was his right, he has fought the fee motion tooth and nail every step of the way—but when the day of reckoning has come, his arsenal has been shown to be empty of weapons (whether defensive or offensive) to fend off Edison's reduced request. And that is just as true of his unquantified and vague allegations about excessive billings as it has been of the other contentions dealt with in this opinion.

One last and somewhat related point bears brief mention. By parity of reasoning, this Court also declines Edison's R.Mem. 14–16 invitation to *increase* the percentage of fees awarded (it suggests levels of 50%, 60% or 70%) because of Wielgos' asserted intransigence in the current proceedings and because the dual purposes of Rule 11 would be better served by such an increased award. It certainly appears highly likely that a detailed review of all the individual records and the limited credits to which Wielgos is entitled would support such a higher award. But it was Edison and not this Court that pegged the original request at the 40% level. This Court is disinclined to undertake the burden of more precise quantification at a higher level without a great deal more input from Edison—without Edison's citing chapter and verse to facilitate that further review, rather than providing only an arithmetical calculation of what the higher percentages would produce as a sanction award.

### Conclusion

Edison is entitled to its earlier request of $159,035 (comprising 40% of its fees plus 75% of its expenses) plus its fees for defending the current motion, which Edison has quantified at $34,708 (Edison Second Supplemental Memorandum Concerning the Award of Attorneys' Fees and Costs ("Edison 2d Supp. Mem.") Ex. 6).

Additionally, Edison has requested the time value of money, which this Court has consistently applied to compensate for the delay in payment (see, e.g., *Lippo v. Mobil Oil Corp.*, 692 F.Supp. 826, 838–43 (N.D.Ill.

1988)) and which the Supreme Court has just reconfirmed as a proper component of fee awards (*Jenkins,* — U.S. at — ——, 109 S.Ct. at 2466–69).[18] Edison 2d Supp. Mem. Exs. 2 through 7 contain some alternative calculations for that purpose, but they have been overtaken by time. Edison is directed to provide to this Court and to Wielgos updated figures, prepared in accordance with *Lippo* (including the compounded cost of borrowing at the prime rate, 692 F.Supp. at 841) except that interest is to be calculated from Edison's actual dates of paying the fees and expenses rather than in accordance with the timing assumptions referred to in *Lippo, id.* at 842. Those calculations, which shall be based on the assumption that this Court's order for payment will be entered July 20, 1989, shall be provided on or before July 17, 1989. As stated earlier, Wielgos and Weaver will be jointly and severally liable for payment.[19]

---

**18.** For the reasons explained in *Lippo,* this Court continues to view an appropriate interest factor as a more accurate measure of the cost of delay in payment than the blunt instrument represented by charging current rather than historical hourly rates.

**19.** Joint and several liability is proper under Rule 11, while Section 11(e) calls for liability on the part of the party litigant (Wielgos) and perhaps the lawyer as well (Opinion II at 306), and Section 1927 imposes only lawyer (Weaver) liability. Under the circumstances of this case, implicating all three provisions, overall joint and several liability is appropriate.